# EXHIBIT A

## DECLARATION IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

I, John Willis, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) do hereby declare:

### Introduction and Agent Background

1. I am currently a Task Force Officer with the DEA and a dually sworn member of the Maryland Transportation Authority Police. I have been employed as a Police Officer for approximately 15 years. I completed the Maryland Transportation Authority Police training academy in early 2011, during which time I successfully completed training in the field of drug/narcotics enforcement, drug recognition, identification, packaging, and report writing. Prior to my employment as a Police Officer, I attended and graduated from the nationally accredited United States Coast Guard Maritime Law Enforcement Academy where I received training in drug/narcotics enforcement, drug recognition, identification, packaging, evidence collection, smuggling and trafficking trends, and report writing.

2. I utilized my knowledge, training, and experience while assigned in patrol where I made and participated in numerous arrests resulting in the seizure of controlled dangerous substances. I made and assisted in numerous criminal arrests related to the possession and distribution of several types of paraphernalia and controlled substances. These substances include Cannabis/Marijuana, Cocaine, Heroin, Methamphetamine, MDMA, PCP, Fentanyl, Psilocybin, and several types of controlled prescription narcotics.

3. I have been assigned to the Maryland Transportation Authority Police, Special Operations Division, Criminal Investigations Unit since November 10, 2021. Since November 10, 2021, I have been assigned full time to the DEA Group 56 as a DEA Task Force Officer. I

have participated in the execution of search and seizure warrants which resulted in the seizure of quantities of controlled dangerous substances, assorted items of packaging materials, paraphernalia related to the narcotics trade, ledger sheets, customer lists, currency and weapons used in the furtherance of illegal narcotics trafficking.

4. Prior to my current assignment to the Criminal Investigations Unit, I was assigned as a Narcotics Detection Canine Handler for approximately 7 years. During my assignment as a narcotics detection canine handler, I routinely handled and trained my assigned canine on the narcotic odors of Cannabis/Marijuana, Cocaine, Heroin, MDMA, and Methamphetamine. As a narcotics detection canine handler, I participated in numerous arrests for controlled substances, as well as numerous seizures of proceeds derived from the sale of controlled dangerous substances.

5. I participated in investigations involving smuggling, narcotics, and other unlawful activities. These investigations included the use of physical and electronic surveillance techniques, confidential informants, undercover transactions, information analysis, investigative interviews, and the execution of search and seizure, and arrest warrants. I arrested narcotics traffickers and I participated in the arrest of narcotics traffickers.

6. I conducted and participated in investigations resulting in the seizure(s) of Heroin, Cocaine, Cannabis/Marijuana, Fentanyl, controlled prescription narcotics, U.S. currency, firearms, and other controlled substances. I am familiar with the way illegal drugs are used, administered, transported, concealed, stored, and distributed. I am familiar with the manner and the methods of payment for such drugs/narcotics, and the way narcotics traffickers communicate with each other. Through my experience participating in these investigations, I learned how large-scale drug trafficking organizations operate.

7. I received specialized training in proactive criminal interdiction to include narcotics trafficking, identifying hidden compartments, patrol drug investigations, narcotics surveillance investigation and drug identification.

## Purpose of This Declaration

8. This Declaration is submitted in support of the Verified Complaint for Forfeiture *In Rem* of the approximately $432,446.00 in U.S. Currency (Asset ID: 25-DEA-718620) seized on February 21, 2025 from John Yuen (the "Defendant Property").

9. I submit that there are sufficient facts to support a reasonable belief that the Defendant Property constitutes: (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) moneys, negotiable instruments, or securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

## Summary of the Investigation

10. The DEA began an investigation into a drug trafficking organization ("DTO") operating in the Baltimore region in or about 2022. That investigation commenced with a traffic stop that resulted in an alert by a certified drug detection canine to the presence of illegal narcotics in the vehicle and the seizure of over $100,000 in U.S. currency. The two individuals present during that traffic stop were identified by law enforcement as drug traffickers and are hereinafter referred to as **Target Suspect 1** and **Target Suspect 2**. In 2024, an anonymous tipster called the DEA Baltimore Field Office and provided information that Target Suspect 1 is drug dealer who uses air travel to traffic narcotics nationwide. That information was based on the tipster's personal

knowledge. A second source of information also provided DEA with evidence indicating that Target Suspect 1 is a drug dealer who traffics narcotics nationwide.[1]

11.     In 2025, DEA and state law enforcement agencies began surveilling Target Suspect 1 and Target Suspect 2. Investigators witnessed Target Suspect 1 engage in behavior consistent with drug trafficking, based on their training and experience. For example, Target Suspect 1 made multiple quick vehicular stops over several days: Target Suspect 1 would stop in front of businesses that are associated with open-air drug markets, such as strip malls or apartment buildings, meet briefly with an individual or two outside the building, and either give to or receive a package from those individuals. Target Suspect 1 would frequently drive erratically and make multiple quick stops at locations for no apparent reason, which is a known counter-surveillance technique that drug traffickers use to prevent law enforcement from tracking them successfully. Sometimes the individuals with whom Target Suspect 1 met were stopped by law enforcement for traffic violations after these meetings, and on at least two of these occasions pounds of marijuana were found inside the stopped vehicles.

12.     During surveillance of Target Suspect 1 and Target Suspect 2, law enforcement identified **James YUEN**. On February 1, 2025, law enforcement observed Target Suspect 1 and Target Suspect 2 meet with a driver of a white 2020 Mercedes-Benz Metris cargo van, who was later identified using his New York State driver's license as YUEN. Law enforcement observed YUEN unload eleven large boxes from the white Mercedes-Benz cargo van in the presence of Target Suspect 1 and Target Suspect 2.

---

[1] DEA investigators met with this source of information ("CS-1") to take their statement. CS-1 is not being paid as a confidential informant or working with the United States pursuant to a cooperation agreement in exchange for a potential sentence reduction. CS-1 is not providing ongoing assistance in this investigation. All information that CS-1 provided to law enforcement that was capable of being verified has proven that CS-1 is truthful and reliable.

13. After the boxes were unloaded, Target Suspect 1 and Target Suspect 2 then gave YUEN three bags (which were approximately the size of two loaves of bread each) through the driver's-side window of the Mercedes. A short time later, they separated.

14. Based on their training, experience, and knowledge of the investigation, law enforcement believed that YUEN had been delivering large quantities of controlled substances to Target Suspect 1 and Target Suspect 2 and had received large payments in U.S. currency in return.

15. Law enforcement established mobile surveillance on YUEN in the 2020 Mercedes-Benz cargo van as he left Baltimore City following this transaction. Law enforcement was able to maintain visual contact with YUEN as he exited Baltimore City and continued north on Interstate 95. Law enforcement officers followed YUEN and observed him in his white Mercedes Benz cargo van as he traveled northbound on Interstate 95.

16. YUEN was operating the vehicle dangerously; he made an unsafe lane change and was closely following the vehicle in front of him. Due to his dangerous operation of the vehicle, law enforcement officers initiated a traffic stop.

17. YUEN identified himself to officers as James YUEN, with a date of birth 01/29/1994, and showed officers his valid New York State driver's license. YUEN told officers that he was coming from moving furniture in Maryland and was headed home to New York. He told officers that he was working for a moving company at the time.

18. YUEN appeared visibly nervous while speaking to the officers who had initiated the stop—he was shaking and swallowing excessively.

19. An officer requested a K-9 unit with a certified drug-detection canine to respond to YUEN's location to conduct a scan of the vehicle. The canine conducted a scan of the vehicle and

alerted positively for the presence of illegal narcotics, indicating that the canine smelled the presence of narcotics in or on the vehicle that YUEN was driving.

20. YUEN told officers that he only had some folding chairs, slippers, and snowboard equipment inside the van, and that he did not know of anything else inside the van.

21. While conducting a search of the vehicle, officers located three large cloth bags hanging from a hook in the rear cargo area. Inside each bag was a large amount of U.S. currency in multiple denominations.

22. Officers asked YUEN if the money was his and he stated: "No, I wish it was."

23. The three bags were the same color and type of bag seen by investigators at the exchange they witnessed with Target Suspect 1 and Target Suspect 2.

24. YUEN then told officers that he did not know who owned the money.

25. Officers advised YUEN that the currency would be seized by law enforcement pending further investigation. Officers asked YUEN to go with them to a nearby police station to speak with them, but YUEN declined.

26. Law enforcement took possession of the U.S. currency and issued traffic warnings to YUEN. YUEN then left the scene.

27. Once the currency was transported to a secure location, law enforcement determined its amount to be $432,446.00.

## Conclusion

28. Based on the foregoing facts and my training and experience, I maintain there is probable cause to believe that the Defendant Property constitutes: (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances

Act; (2) proceeds traceable to such an exchange; or (3) moneys, negotiable instruments, or securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23rd day of November, 2025.

John Willis
Task Force Officer
Drug Enforcement Administration